# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

_____

No. 93-2653

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOE GAMBOA RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
(CR-H-92-191)

_____

(January 11, 1995)

Before JONES and STEWART, Circuit Judges, and DUPLANTIER[*], District
Judge.

CARL E. STEWART, Circuit Judge:

Joe Gamboa Rodriguez appeals his conviction for being a felon
in possession of a firearm. He contends that the district court
erred in several rulings and that the prosecutor impermissibly
commented on his post-arrest silence. He also contends that the
evidence shows that he was entrapped. We affirm.

## FACTS

On or about 12/2/91, Special Agent Ramon Bazan of the Bureau
of Alcohol, Tobacco, and Firearms (ATF) acted as an undercover
agent in the purchase of a firearm from Rodriguez. Another ATF

---

[*]  District Judge of the Eastern District of Louisiana,
sitting by designation.

agent had provided Agent Bazan with a recording device and instructed him to meet Rodriguez and Albert Martinez Medina (also known as "Beto"), an informant, in the parking lot of a Whataburger restaurant. Agent Bazan met Rodriguez and Medina and bought the firearm from Rodriguez. In a one-count indictment filed 8/19/92, a grand jury charged Joe Gamboa Rodriguez with possession of a firearm by a convicted felon.

At trial, the jury heard Agent Bazan's testimony that Rodriguez showed Agent Bazan a pistol that was in the trunk of the car and that all three men got into the car at Agent Bazan's request. Rodriguez negotiated the price of $100, and Medina remained silent as he had been instructed by the ATF. The jury also heard that Rodriguez said that he could get larger caliber firearms or a machine gun for Agent Bazan. Rodriguez did not appear to Agent Bazan to be afraid. The Government played an audio tape recording of the transaction in open court and provided the jury with a transcript of the taped conversation.

The jury also heard Rodriguez' testimony that, in December 1991, Medina called and asked if he knew where to sell a gun. Rodriguez answered that he did not. Medina called a second time and asked Rodriguez to meet him in the apartment parking lot. Medina offered Rodriguez $20 to sell a gun to Medina's friend, who would buy it if Rodriguez would help. According to Rodriguez, when he refused to help, Medina got angry and threatened to get to him or his family. Rodriguez stated that he took the threat seriously because Medina was a member of the Texas Prison Syndicate and had stabbed someone in prison. After Rodriguez agreed to sell the gun,

Rodriguez, Medina, and Lupe, Medina's wife, drove to a Whataburger. During the drive, Medina instructed Rodriguez to say that the pistol was his and that the price was $100.

According to Rodriguez, at the Whataburger, Medina introduced Rodriguez to Agent Bazan, took the gun out of the trunk, put it in the front seat between Rodriguez and Agent Bazan, then went inside with his wife to get something to eat. Rodriguez stated that he followed Medina's instructions by selling the gun to Agent Bazan and talking to Agent Bazan about getting more guns in the future.

The Government called Medina as a rebuttal witness. Medina testified that he worked as an informant for the ATF in ten cases and received payment approximating $10,000 for his services. Moreover, Medina received a favorable plea agreement in a firearms conviction, which included a reduced sentence, a possible further reduction in sentence upon motion by the Government, and protective custody because the Texas Syndicate allegedly had contracted to kill him. Medina testified that the ATF asked him to put the word out that he would be willing to sell "hot" jewelry, gold, VCR's, camcorders, and firearms. About three or four months before the instant sale, Medina spoke to Rodriguez about purchasing guns. Medina denied threatening Rodriguez and stated that Rodriguez eventually contacted him to sell a gun. According to Medina, when he picked Rodriguez up at his apartment, Rodriguez had the gun wrapped in a towel, and Medina opened the trunk to permit Rodriguez to place the gun in the trunk. Contrary to Agent Bazan's testimony yet consistent with Rodriguez' testimony, Medina stated that he was

not present during the negotiations between Agent Bazan and Rodriguez.

The jury returned a verdict of guilty, and the district court imposed a term of imprisonment of 188 months, a five-year term of supervised release, and a special assessment of $50.

DISCUSSION

ISSUE 1:   WHETHER THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN ALLOWING CROSS-EXAMINATION OF THE DEFENDANT REGARDING HIS PRE-TRIAL FAILURE TO MENTION HIS ENTRAPMENT DEFENSE?

Rodriguez contends that his due process rights were violated when the Government questioned him at trial concerning his post-arrest silence.[1]

Specifically, Rodriguez complains of the following sequence of questions.  On cross-examination, the Government asked:  "Mr. Rodriguez, . . . when did you tell the police about the threat you received?"  Rodriguez answered that he did not tell the police, and counsel for Rodriguez objected on grounds that the question constituted "a comment on Mr. Rodriguez's post-arrest silence."  The district court overruled the objection.  The Government continued the cross-examination, and the following colloquy occurred:

> [Prosecutor]:  And, of course, the reason you didn't tell the police about that threat was because you were afraid of Beto Medina; is that your story?

---

[1]      It is undisputed that Rodriguez's pre-arrest, pre-Miranda silence does not implicate due process. See Jenkins v. Anderson, 447 U.S. 231, 240, 100 S. Ct. 2124, 2130, 65 L. Ed. 2d 86 (1980) (no constitutional violation if the prosecution uses pre-arrest, pre-Miranda warning silence, to impeach the credibility of the defendant because "no Government action [has] induced [the defendant] to remain silent.").

**4**

[Defense counsel]: I'd like -- just for the record, I'd like to renew my previous objection.

THE COURT: Overruled.

[Rodriguez]: I was afraid of the Texas Syndicate and him, yes, sir.

[Prosecutor]: And you thought the best time to come in here and tell the story was today?

[Defense counsel]: Again, just for the record, I have to object again.

THE COURT: Overruled.

[Rodriguez]: Yes, sir.

The government argues that, given the time period that elapsed between this offense and Rodriguez' arrest, it sought to clarify the timing of his claim, as opposed to commenting on the substance of the claim. The government contends that its inquiry "compared the reasonableness of the two year delay in accusing the informant of threatening him with Rodriguez' credibility." According to the government, the prosecutor's inquiry related to Rodriguez' pre-arrest silence, not to his post-arrest silence, and Rodriguez has failed to meet his burden of proving that the sole purpose of the inquiry was to comment upon Rodriguez' post-arrest silence.

In Doyle v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment prohibits impeachment of a defendant's exculpatory story, told for the first time at trial, by using the defendant's post-arrest silence. A prosecutor's or witness's remarks constitute comment on a defendant's silence if the manifest intent was to comment on the defendant's silence, or if the

5

character of the remark was such that the jury would naturally and necessarily so construe the remark. United States v. Carter, 953 F.2d 1449, 1464 (5th Cir. 1992), cert. denied sub nom, Hammock v. United States, 112 S.Ct. 2980, 119 L.Ed.2d 598 (1992) (citing United States v. Shaw, 701 F.2d 367, 381 (5th Cir. 1983), cert. denied, 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984)). Although virtually any description of a defendant's silence following arrest and a Miranda[2] warning will constitute a Doyle violation, a prosecutor's comments must be evaluated in context. United States v. Laury, 985 F.2d 1293, 1303 (5th Cir. 1993) (internal quotation and citations omitted). In Chapman v. United States, 547 F.2d 1240 (5th Cir. 1977), cert. denied, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977), the Court classified Doyle violations into three categories:

> When the prosecution uses defendant's post-arrest silence to impeach an exculpatory story offered by defendant at trial and the prosecution directly links the implausibility of the exculpatory story to the defendant's ostensibly inconsistent act of remaining silent, reversible error results even if the story is transparently frivolous.

> When the prosecutor does not directly tie the fact of defendant's silence to his exculpatory story, i.e., when the prosecutor elicits that fact on direct examination and refrains from commenting on it or adverting to it again, and the jury is never told that such silence can be used for impeachment purposes, reversible error results if the exculpatory story is not totally implausible or the indicia of guilt not overwhelming.

---

[2] Miranda v. State of Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

**6**

When there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error.

547 F.2d at 1249-50 (citations and footnote omitted).  Many cases cannot be resolved solely by reference to the Chapman categories; in such instances, we apply a case-by-case approach using the Chapman categories as guidelines for assessing the prejudice to the defendant in the particular context, including the strength of the evidence.  Carter, 953 F.2d at 1465.

As in Laury, the instant prosecutor's questions were sufficiently broad as to be construed as commentary on Rodriguez' failure to come forward with his alibi (1) prior to arrest, (2) immediately after arrest and Miranda warnings (the classic Doyle violation), and (3) during the time period prior to trial but following his arrest (the non-classic Doyle violation).[3]  See Laury, 985 F.2d at 1302 and at n. 11.  The Doyle protection derives

---

[3]  We are not persuaded by Rodriguez' argument in brief that,

Where the record is ambiguous, and where the jury was free to think it was Appellant's post-Miranda silence that was being thrown up to him, the rule of lenity dictates that this be considered a per-se Doyle violation.  Bifulco v. United States, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980).

The rule of lenity is a principle of *statutory construction*. Under this rule, ambiguity may not be used to defeat manifest congressional intent.  See Bifulco, 100 S.Ct. at 2252.  Thus, the rule of lenity, as discussed in Bifulco, is inapplicable to these facts which involve neither statutory construction nor congressional intent.

primarily from the implicit assurance of the <u>Miranda</u> warnings and thus is strongest in the classic <u>Doyle</u> context of immediate post-<u>Miranda</u>-warning interrogation. <u>See</u> <u>Carter</u>, 953 F.2d at 1464.

Rodriguez does not specifically argue that the period in question is immediately following his arrest and <u>Miranda</u> warnings, and the record does not indicate that Rodriguez was <u>Mirandized</u> or that there was *any* government-induced silence. For these reasons, we deem the relevant period to be the time prior to trial but following his arrest, and we note that it is questionable whether these facts present a <u>Doyle</u> situation at all. Nevertheless, assuming <u>arguendo</u> that there has been a <u>Doyle</u> violation, due to the relevant time period, as well as the absence of indicia of government-induced silence, we deem any such violation to be a non-classic <u>Doyle</u> violation.

*Standard of Review: Plain or Harmless Error?*

This court normally reviews <u>Doyle</u> violations for harmless error. <u>See</u> <u>Chapman</u>, 547 F.2d at 1247-48. The Government argues that assuming, <u>arguendo</u>, that the prosecutor's questions violated <u>Doyle</u>, "the error was a non-classic <u>Doyle</u> error and is subject to review for plain error." As authority for its argument, the Government relies on <u>Laury</u> and <u>Carter</u>, contends that Rodriguez failed to demonstrate that his substantial rights were adversely affected, and asserts that no relief is warranted.

In <u>Carter</u>, the prosecutor made three comments which were challenged on appeal. The discussion of the second comment (Comment 2) included an analysis of the effect of the district

**8**

court's curative instruction to the jury, after which the court stated "for these reasons, we assess Comment 2 under the plain-error standard." Id. at 1466. Relying on Carter's discussion of Comment 2, Laury stated in a footnote that "non-classic Doyle violations are reviewed for plain error." Laury, 985 F.2d at 1304 n.11.

Both Laury and Carter invoked the plain-error standard where there was no objection by the defendant. Carter also applied this standard where there was a delayed objection, followed by a curative instruction. Neither case stands for the proposition that "non-classic Doyle violations are reviewed for plain error." Laury's footnote 11 correctly observes that Carter distinguished between classic Doyle violations and non-classic Doyle violations. In distinguishing between the two types of violations, Carter discussed the role of Miranda warnings and noted that there may be reasons or motives other than reliance on Miranda for the defendant's decision to remain silent. The Carter court discussed three considerations which militated against strict application of Chapman's first rule (*that reversal is mandated even if the story is transparently frivolous*) to Comment 2. Carter questioned whether the "strict due process safeguards" of Chapman, derived solely from Doyle, represent the proper approach to assessing the harmfulness of Comment 2. Carter, 953 F.2d at 1465. It is unclear whether the language "strict due process safeguards" refers to the aforementioned Chapman rule or to the harmless error standard of review. Thus, Carter does not expressly state that non-classic

**9**

violations are reviewed for plain error. We therefore distinguish Laury's footnote 11 as applicable to the facts of that case, and decline to extend it to facts such as the instant case in which the defendant contemporaneously objected to the challenged comments.

For these reasons, we find that neither Carter nor Laury controls the instant case on the question of "plain error versus harmless error" standard of review. Accordingly, even assuming that this is a non-classic Doyle violation, we follow the general rule of harmless error analysis.

*Harmless or Reversible Error?*

An error is harmless if the reviewing court is sure, after viewing the entire record, that the error did not influence the jury or had a very slight effect on its verdict. United States v. Quintero, 872 F.2d 107, 111 (5th Cir. 1989) cert. denied, 496 U.S. 905, 110 S.Ct. 2586, 110 L.Ed.2d 267 (1990), quoting United States v. Heller, 625 F.2d 594, 599 (5th Cir. 1980). Thus, under the harmless error doctrine, we examine whether the improper comment had a significant impact on the jury. See Shaw, 701 F.2d at 383.

Rodriguez's defense was "not so implausible as to be dismissed out of hand," but the evidence of his guilt (if credited by the jury) was overwhelming. See and compare Shaw, Id. (quoting United States. v. Impson, 531 F.2d 274, 278 (5th Cir. 1976)); United States v. Serrano, 607 F.2d 1145, 1151-1153 (5th Cir. 1979); United States v. Dixon, 593 F.2d 626 (5th Cir. 1979). The government presented to the jury a tape and transcript of the conversation

between Rodriguez and Agent Bazan during the offense itself. This evidence was consistent with Agent Bazan's testimony.

Unlike Laury, the instant prosecutor did not refer to Rodriguez silence while he sat in jail, or to any other time period other than the December 2, 1991 offense and the date of trial, May 10, 1993. The challenged questions which the prosecutor asked Rodriguez on cross-examination do not refer to *any* specific time period. Thus, although there was a "manifest" intent to refer to Rodriguez' silence, the prosecutor made no reference to constitutionally protected post-arrest silence. However, the record does not reflect that the jury was made aware of the extensive time period between the December 2, 1991 offense and the August 19, 1992 indictment, or the March 5, 1993 arraignment.

While it is possible for the jury to speculate regarding whether the silence questioned is pre- or post- arrest, the character of the remark was not such that the jury would naturally and necessarily so construe the remark. Given the unusual facts of this case, particularly the absence of indicia of government-induced silence, combined with overwhelming evidence in the form of Agent Bazan's testimony which was corroborated by a tape and transcript of the transaction itself, we do not find that the prosecutor's ambiguously broad reference to Rodriguez' silence influenced the jury so as to constitute reversible error.

ISSUE 2:   WHETHER THE PROSECUTOR'S STATEMENTS IN HIS CLOSING ARGUMENT CONSTITUTE PROSECUTORIAL MISCONDUCT AND A DENIAL OF DUE PROCESS?

Rodriguez specifies two comments made by the prosecutor during closing argument: (1) "Is this the type of person that you would

**11**

feel comfortable living next door to you?", and (2) "The defense has the ability to bring any person in the courtroom that they wish to tell you anything that they think  would have an impact on this case."  After the first comment, defense counsel's objection was sustained and the jury was instructed to disregard the statement. The defense then moved for a mistrial but the district court overruled the motion.  After the second comment, counsel approached the bench.  The district court stated that the defense objection was a valid one.  However, rather than instructing the jury to disregard the statement as requested by the defense, the court overruled the objection and instructed the prosecutor to tell the jury that the defendant has no burden to prove his innocence.

"Counsel is accorded wide latitude during closing argument, and this court gives deference to a district court's determination regarding whether those arguments are prejudicial and/or inflammatory."  United States v. Willis, 6 F.3d 257, 263 (5th Cir. 1993) (citation and internal quotation marks omitted).  Improper comments by a prosecutor may constitute reversible error where the defendant's right to a fair trial is substantially affected. United States v. Anchondo-Sandoval, 910 F.2d 1234, 1237 (5th Cir. 1990), quoted in United States v. Andrews, 22 F.3d 1328, 1341 (5th Cir. 1994), cert. denied, 115 S.Ct. 346, 130 L.Ed.2d 302 (1994). The pertinent factors to consider include: (1) the magnitude of the prejudicial effect of the statements; (2) the efficacy of any cautionary instruction; and (3) the strength of the evidence of the defendant's guilt.  Id.; United States v. Casel, 995 F.2d 1299,

**12**

1308 (5th Cir. 1993), cert. denied, 114 S.Ct. 1308, 127 L.Ed.2d 659 (1994).

Reversal based on improper argument by the prosecutor is not called for when there has not been a strong showing of a deleterious effect upon the right to a fair trial. Casel, 995 F.2d at 1308. To warrant reversal of a conviction, prosecutorial misconduct must be so pronounced and persistent that it casts serious doubts upon the correctness of the jury's verdict. United States v. Williams, 20 F.3d 125, 134 (5th Cir. 1994), cert. denied, 115 S.Ct. 239, 130 L.Ed.2d 162 (1994) (citation and internal quotations omitted); Andrews, 22 F.3d at 1341 (citations omitted). The closing argument must be analyzed in the context of the entire trial to determine whether it affected substantial rights of the accused. United States v. Young, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985);

The prosecutor's question about Rodriguez' neighborliness was improper but harmless, given the prompt curative instruction to disregard the question, as well as the overwhelming evidence as discussed above. As to the second comment, we find the curative action sufficient to render the error, if any, harmless. Contrary to Rodriguez' assertions, neither comment appears linked to the prosecutor's cross-examination comment on his silence. In the context of the entire trial, we find no error in the district court's evaluation of the prejudicial effect of these comments.

ISSUE 3:    WHERE THE DISTRICT COURT PROPERLY ALLOWED ADMISSION OF FED.R.EVID.
            403 AND 404(B) EVIDENCE?

Rodriguez points to the following two statements as prohibited Federal Rule of Evidence 404(b) other crimes evidence of his character. In the first statement, Agent Bazan told the jury that it was his interpretation that Rodriguez' statement that, "Right now, it's slow", referred to Rodriguez' business of buying and selling guns or drugs. The second statement was made during rebuttal by Medina, who gave a nonresponsive answer that he knew Rodriguez "had been out burglarizing". The district court *sustained* Rodriguez' objection to each of the challenged statements and instructed the jury to disregard them. There was no admission, erroneous or otherwise, of Rule 404(b) evidence, and therefore, we do not analyze these arguments under Rule 404(b).[4] Nevertheless, the jury heard the statements; therefore, our inquiry is whether any prejudice therefrom constitutes reversible error.

The prejudicial effect of comments such as these may be reduced by cautionary instruction from the trial judge. See and compare, United States v. Wilkes, 685 F.2d 135, 138 (5th Cir. 1982) (citations omitted). See also, United States v. Contreras, 602 F.2d 1237, 1240 (1979), cert. denied, 444 U.S. 971, 100 S.Ct. 466, 62 L.Ed.2d 387 (1979).

---

[4] For this reason, we also do not address Rodriguez' assertion that the district court did not comply with the United States v. Beechum, 582 F.2d 898 (5th Cir. 1978), requirement to articulate on the record its Rule 403 balancing test findings. There was no need for the district court to perform a balancing test when it *sustained* Rodriguez' objections to the evidence.

Rodriguez asserts that the Government presented two "experienced witnesses" who told the jury their opinion that Rodriguez was a full-time, dangerous criminal and who knew of the prohibited nature of their statements, as well as the respective statement's inflammatory, prejudicial effect upon the jury. Rodriguez contends that "it is crucial that both statements were made long before Rodriguez attempted to raise his defense of entrapment." For the following reasons, we find these arguments unpersuasive.

Only Agent Bazan's comment was made prior to Rodriguez' testimony that he was entrapped. After the district court sustained the Rule 404(b) objection, Agent Bazan went on to testify, without objection, that Rodriguez said that he would try to get a larger caliber firearm, and that when he got something else, he would give Agent Bazan a better deal. Evidence that was independent of Agent Bazan's interpretation was presented to the jury --specifically, the transcript and tape of the conversation in which Rodriguez had said "Right now, it's slow" (which revealed the context of the first challenged statement), as well as Rodriguez' testimony about what he had said and why. Thus, the jury was able to draw its own conclusion from all the evidence and not only from Agent Bazan's interpretation. As to Medina's answer, made during rebuttal, we agree with the district court's observation that any prejudicial effect it may have had was minimal because the jury was already aware of Rodriguez' burglary conviction.

Under these circumstances, we are convinced that the district court's instructions rendered harmless any prejudicial effect from either statement. Accordingly, we find no abuse of the district court's discretion, and no merit to Rodriguez' various arguments on this issue.

ISSUE 4: WHETHER THE TRIAL COURT IMPERMISSIBLY DENIED DEFENDANT'S MOTION TO REOPEN AFTER THE CLOSE OF EVIDENCE TO ALLOW DEFENDANT TO TESTIFY TO HIS CONVERSATION, DURING TRIAL, WITH GOVERNMENT WITNESS MEDINA IN THE PRISON VAN?

After the close of all the evidence, court was adjourned for the evening. The next day, prior to closing argument, the defense moved to reopen the testimony to allow Rodriguez to testify about the substance of a conversation he had with Medina, the informant, on the preceding day. The following was proffered to preserve Rodriguez' objection for appeal:

My client told me that this morning after the trial yesterday he rode back in the same van with Albert Medina, that they had a conversation, that my client asked Albert Medina, "Why did you do this to me?" Albert Medina said it wasn't you. It was --it's the carnales which is a word the Texas Syndicate members use to refer to themselves.

Among other things in the conversation, my client asked Albert Medina, "Where did you get the gun?" Medina refused to answer. "Did the ATF give you the gun?" Medina said, "No." Then my client asked Albert Medina, "Did you get the gun in a burglary?" Albert Medina said, "I can't tell you." "Why can't you tell me." "I just can't tell you."

The district court noted that the proposed evidence would be cumulative at best, and denied the motion to reopen.

Whether to grant a motion to reopen is within the trial court's discretion, and the parties correctly agree that the denial of a motion to reopen is reviewed for abuse of this discretion.

**16**

Factors to be considered in determining whether there has been an abuse of discretion in the trial court's denial of defendant's motion to reopen include (1) timeliness of the motion, (2) whether a proffer is made, (3) the character of the proffered testimony, (4) the effect of granting the motion, (5) existence of an explanation for failing to present the evidence during the movant's case-in-chief, (6) whether the explanation is reasonable, and (7) whether the proffer is relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused. United States v. Walker, 772 F.2d 1172, 1177 (5th Cir. 1985); United States v. Thetford, 676 F.2d 170, 182 (5th Cir. 1982).

Rodriguez asserts that the trial court abused its discretion and thereby denied him the chance to add significant impeaching testimony against the Government informant. He observes that the evidence could not have been considered during its case in chief because it did not exist until after the defense rested.

The motion to reopen was timely made, and referred to information which could not have been produced during Rodriguez' case in chief. However, evidence about Medina's involvement with the Texas Syndicate, as well as Rodriguez' testimony that Medina had brought the weapon, had been presented to the jury. For these reasons, we find no error in the district court's observation that this testimony was cumulative and, thus, would not have helped the jury to ascertain Rodriguez' guilt or innocence. This ruling was not an abuse of the district court's discretion.

**17**

ISSUE 5:   WHETHER THE EVIDENCE, AS A MATTER OF LAW, WAS SUFFICIENT TO SUSTAIN DEFENDANT'S DEFENSE OF ENTRAPMENT?

Standard of Review

Rodriguez moved for a directed verdict[5] on the issue of entrapment at the close of the Government's case, and concedes that he did not renew his motion at the close of his own case.  However, he asserts that because the doctrine of entrapment is a court-created doctrine, rather than a constitutional doctrine, his motion for directed verdict was sufficient to remove this case from the "plain error" standard.  He cites no authority for this assertion, and we do not find it persuasive.

When a jury, which was fully charged on entrapment, rejects the defendant's entrapment defense, the applicable standard of review is the same as that which applies to sufficiency of the evidence.  United States v. Mora, 994 F.2d 1129, 1137 (5th Cir. 1993), cert. denied sub nom, Medina v. United States, 114 S.Ct. 417, 126 L.Ed.2d 363 (1993).  When a defendant fails to renew his motion for acquittal at the close of all the evidence, plain error is the standard of review for his challenge to the sufficiency of the evidence.  United States v. Pierre, 958 F.2d 1304, 1310 (5th Cir. 1992) (en banc), cert. denied sub nom, Harris v. United States, 113 S.Ct. 280, 121 L.Ed.2d 207 (1992); United States v. Thomas, 12 F.3d 1350, 1358 (5th Cir. 1994), cert. denied, 114 S.Ct. 1861, 128 L.Ed.2d 483 (1994) (finding plain error standard as

---

[5]   "Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place."  Fed. R. Crim. P. 29(a).

proper where the defendant fails to move for judgment of acquittal at the close of evidence).

In <u>United States v. Byrd</u>, 31 F.3d 1329, 1335 (5th Cir. 1994) this court stated the following:

> Because the Government has the burden to prove predisposition, the issue is in essence a challenge to the sufficiency of the Government's evidence. The appellate court must therefore accept every fact in the light most favorable to [sic] jury's guilty verdict, and may reverse only if no rational jury could have found predisposition beyond a reasonable doubt. <u>United States v. Sandoval</u>, 20 F.3d 134, 137 (5th Cir. 1994).

The instant jury rejected Rodriguez' entrapment defense after it had been fully charged on entrapment. Therefore we may reverse only if no rational jury could have found beyond a reasonable doubt that Rodriguez was predisposed to commit this offense.

<u>Legal Principles</u>

The first step in a successful entrapment defense is to make a *prima facie* showing by presenting "some evidence" that government conduct created a substantial risk that an offense would be committed by a person other than one ready to commit it. <u>Mora</u>, 994 F.2d at 1137; <u>United States v. Hudson</u>, 982 F.2d 160, 162 (5th Cir. 1993), <u>cert. denied</u>, 114 S.Ct. 100, 126 L.Ed.2d 67 (1993) (citations and internal quotations omitted). After the defendant satisfies this threshold requirement, he is entitled to a jury instruction on entrapment, and the burden shifts to the Government to prove, beyond a reasonable doubt, that the defendant was disposed to commit the criminal act before being approached by Government agents. <u>Hudson</u>, <u>Id.</u>

**19**

The active, enthusiastic participation on the part of the defendant is enough to allow the jury to find predisposition. Hudson; Mora. Generally speaking, a defendant's testimony cannot by itself establish entrapment as a matter of law because, absent unusual circumstances, the jury is almost always entitled to disbelieve that testimony. Mora, 994 F.2d at 1137 (citation omitted).

Analysis

Rodriguez argues that his testimony presented evidence of entrapment and that Agent Bazan was unable to say that he had not been entrapped. He contends that the gun was not in Rodriguez' possession; it remained in the trunk of Medina's car, and there were no fingerprints on the gun to tie it to Rodriguez. Rodriguez also argues that government involvement impermissibly led to his entrapment. Just as in Byrd, Rodriguez' arguments, in essence, challenge the sufficiency of the evidence against him.

The jury heard evidence that Rodriguez pulled the gun from the trunk of the informant's car prior to the sale. From both Agent Bazan's testimony and the tape and transcript of the transaction, the jury could reasonably have found that Rodriguez actively and enthusiastically participated in this offense. The only evidence that the informant recruited Rodriguez to participate in the sale of the gun was Rodriguez' testimony, and the jury was entitled to discredit this testimony as well as that of any other witness. There was sufficient evidence to support the jury's verdict: a

**20**

rational jury could have found that Rodriguez was predisposed to commit this offense.

## CONCLUSION

For the foregoing reasons, Rodriguez' conviction is AFFIRMED.