UNITED STATES of America,
Plaintiff–Appellee,

v.

Phillip Duane TREMELLING,
Defendant–Appellant.

No. 94–40476
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1995.

T.J. Baynham, Jr., (Court appointed), Tyler, TX, for appellant.

Richard Moore, Ruth Harris Yeager, U.S. Attys., Tyler, TX, for appellee.

Before JONES, BARKSDALE and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Phillip Duane Tremelling (Tremelling) appeals the sentence imposed after conviction for a drug conspiracy offense. He argues, among other things, that the district court's finding regarding the quantity of drugs was clearly erroneous because the DEA agents delivered additional marijuana for the pur-

pose of increasing his offense level. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

Tremelling pleaded guilty to conspiracy to possess with intent to distribute marijuana and was sentenced to 97 months imprisonment and five years supervised release.

In December 1989, DEA Task Force Officer Jackie Grier, in an undercover capacity, met Tremelling for the purpose of purchasing marijuana. The transaction did not take place, but Tremelling contacted Grier in August 1990 to advise him that there was a buyer interested in purchasing marijuana from the agent. On September 4, 1990, Tremelling contacted Grier by phone to inform him that one of the buyers was having trouble raising the money, but that he had another buyer who wanted to purchase approximately 150 pounds of marijuana and possibly more. Tremelling contacted Grier on September 6, 1990, and advised that he and the buyer would meet with the agent in Shreveport. On September 7, Tremelling contacted Grier by phone from a Shreveport motel. DEA agents initiated surveillance at the motel and observed Tremelling meet with co-defendants Ricky Jernigan and Roger Garson, and a female named Katherine Whalen. The agents then followed them to Tyler, Texas.

Upon arrival in Tyler, Tremelling contacted Grier, and they arranged a meeting at a restaurant. Tremelling and Jernigan met with Grier in the agent's automobile in the restaurant parking lot. Grier informed the men that he desired to see the money prior to taking them to the drug storage location. Jernigan walked over to the vehicle occupied by Garson and the woman and obtained a backpack. Jernigan returned to Grier's vehicle and displayed approximately $140,000 cash in the backpack. Jernigan and Grier departed in Grier's vehicle and travelled to a warehouse in Tyler, while Tremelling followed in another vehicle.

DEA agents drove a van containing 240.5 pounds of marijuana into the warehouse. Grier, Jernigan, and Tremelling arrived, and Grier unloaded seven bales of marijuana and digital scales from the van. Jernigan and Tremelling weighed and inspected each bale, and Jernigan agreed to purchase 175 pounds of marijuana. Tremelling stated he would take the remainder, approximately 65 pounds, "on-the-front." Jernigan stated that he would like to eventually purchase 1,000 pounds of marijuana per week if Grier could furnish that quantity. Jernigan gave Grier $147,280 in cash from the backpack. The agents then arrested Tremelling and Jernigan.

## ANALYSIS

### I. *Quantity of drugs*

Tremelling argues that the court erred when it failed to find that the government engaged in sentencing factor manipulation for the purpose of increasing his base offense level.[1] He contends that the deal to purchase marijuana was for 150 pounds and that the DEA produced 240 pounds of marijuana in order to increase the amount to the next higher sentencing range of over 100 kilograms. He further contends that the statement in the PSR that he agreed to take the additional 65 pounds "on-the-front" is absurd because no drug dealer would give him the marijuana without payment.

■ The district court adopted the findings in the PSR and denied Tremelling's objections, stating, "I remember the testimony from the case that was tried, they very laboriously weighed it out; and so, I don't think there's anything that just looks unduly suspicious about the fact that they brought more marijuana than perhaps had been, ... 'contracted for.'" A district court's finding regarding the quantity of drugs attributable to the defendant is reviewed for clear error. *United States v. Rogers*, 1 F.3d 341, 342 (5th Cir.1993). Tremelling, however, cites cases from other circuit courts which have recognized the concept of sentencing factor manip-

---

**1.** Sentencing factor manipulation is a "kissing cousin" of entrapment. *United States v. Gibbens*, 25 F.3d 28, 30 (1st Cir.1994).

ulation.[2] He argues that the district court should have found that there had been sentencing manipulation and therefore set his base offense level at 24.

■ Although this Court apparently has not expressly determined whether we have accepted the concept of "sentencing factor manipulation," we have addressed a similar contention in the context of a due process claim in *United States v. Richardson*, 925 F.2d 112, 117–18 (5th Cir.), *cert. denied*, 501 U.S. 1237, 111 S.Ct. 2868, 115 L.Ed.2d 1034 (1991). In *Richardson*, we considered the defendant's argument that the government, in a reverse-sting-money-laundering operation, brought more money to the table in order to rachet up the sentence in violation of due process. This Court concluded that the district court's discretion in determining whether the amount of money was relevant conduct was a sufficient check on the government's ability to arbitrarily influence the sentence by bringing large amounts of money to the table to the surprise of the defendant. *Id.* We further found that the government had not unfairly manipulated the amount of money because the defendant had repeatedly asked for larger sums to launder and had accepted the funds. *Id.* at 118. In *United States v. Evans*, 941 F.2d 267, 273 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 451, 116 L.Ed.2d 468 (1991), this Court, citing *Richardson*, used the same analysis in deciding that the government had not manipulated the drug amount.

Applying the analysis used by this Court in *Richardson* and *Evans*, it must be determined whether the district court clearly erred in finding that the entire amount of marijuana was part of Tremelling's relevant conduct. Relevant conduct allows the court, in determining the base offense level, to consider "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," and, in the case of a conspiracy, "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(A) and (B).

Tremelling does not argue that the district court could not consider the 175 pounds of marijuana, 25 pounds over the alleged contract amount of 150 pounds, actually purchased by Jernigan. His argument is directed specifically to the 65 pounds, which put the amount over the 100 kilogram mark. The PSR stated that "Tremelling stated he would take the remainder (approximately 65 pounds) 'on-the-front.'" Tremelling did not present any evidence at the sentencing hearing to contradict this fact. He merely made unsworn assertions in his objections to the PSR. The district court was free to adopt the facts as stated in the PSR. *Rogers*, 1 F.3d at 345. The district court could then consider this quantity of marijuana, in addition to the 175 pounds, as relevant conduct because it was an act actually committed by Tremelling. *See* § 1B1.3(a)(1)(A).

Tremelling does *not* contend that he resisted taking the extra amount and that the government, through overbearing and outrageous conduct, overcame his resistance. *See United States v. Cotts*, 14 F.3d 300, 306 n. 2 (7th Cir.1994) (no evidence that defendant's will was overborne by unrelenting government persistence). He merely contends that the government brought the extra amount and offered it to him without requiring payment, which no drug dealer in his right mind would do. Tremelling's argument is not persuasive. "Fronting" is a recognized practice among drug dealers. *Cotts*, 14 F.3d at 307. As the court below found, Tremelling and Jernigan very carefully weighed out the amount that they wanted to purchase. Jernigan agreed to purchase 175 pounds, and Tremelling agreed to take the additional 65 pounds. The district court's finding that the government's conduct in bringing the additional marijuana was not suspicious is not clearly erroneous. However, even if it were suspicious, we are not disposed to find that the government's suspicious conduct by itself would constitute sentencing manipulation. Nor do we feel that the government's con-

---

**2.** *See e.g., United States v. Connell*, 960 F.2d 191 (1st Cir.1992). *See also United States v. Staufer*, 38 F.3d 1103 (9th Cir.1994) (sets forth law of various circuits regarding whether the concept of sentencing factor manipulation has been accepted).

duct in this case should be subject "to a special brand of scrutiny when its effect is felt in sentence, as opposed to offense, determination." *Cotts,* 14 F.3d at 306 n. 2. Indeed, "[i]f we are willing to accept the assumption apparently approved by Congress that dealing in greater quantities of drugs is a greater evil, it is not clear to us what the precise legal objection to governmental behavior based on cognizance of relative penal consequences in this area could be (so long as it does not rise to the level of true entrapment or conduct 'so outrageous that due process principles would absolutely bar the government from invoking judicial processes[ ) ].' " *Id.* (quoting *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973)). The trial court did not err in using the 109.09 kilograms of marijuana as a basis for Tremelling's sentence.

## II. *Acceptance of responsibility*

Tremelling argues that the court erred in denying him a three-point reduction in his offense level for acceptance of responsibility pursuant to § 3E1.1. In support of his contention that he is entitled to such a reduction, he points to the following events: he pleaded guilty; cooperated with the government; and provided the DEA with information which resulted in a conviction. He argues that he should not have been denied the reduction simply because he absconded prior to sentencing.

■ If a defendant "clearly demonstrates acceptance of responsibility for his offense," the sentencing guidelines instruct the district court to decrease the defendant's offense level by two and possibly three points. U.S.S.G. § 3E1.1(a) and (b). Because of the district court's unique position to evaluate whether the defendant has demonstrated acceptance of responsibility, we review such a determination under a standard of review more deferential than that of clear error. *United States v. Diaz,* 39 F.3d 568, 571 (5th Cir.1994). The defendant bears the burden of proving that he is entitled to the downward adjustment. *United States v. Kinder,* 946 F.2d 362, 367 (5th Cir.1991), *cert. denied,* —— U.S. ——, ——, 112 S.Ct. 1677 &

2290, 118 L.Ed.2d 394, 119 L.Ed.2d 214 (1992).

■ Tremelling received a two-point upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1 for absconding. Tremelling does not challenge this adjustment, which is authorized by the guidelines for willfully failing to appear. *See* § 3C1.1, comment. (n. 3(e)). "Conduct resulting in an enhancement under § 3C1.1 ... ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." Section 3E1.1, comment. (n. 4). Tremelling argues that his absconding should not have automatically resulted in two extra points for obstruction of justice *and* no reduction for acceptance of responsibility. However, as quoted above, the interaction of these two provisions is specifically contemplated by the guidelines. Moreover, in view of the fact that Tremelling remained a fugitive for over two years, he has not shown that his case is extraordinary and deserving of the reduction. The district court did not err in refusing to find that Tremelling was not entitled to a reduction of his offense level for acceptance of responsibility.

## III. *Minor participant*

Tremelling argues that the district court erred in not finding that he was a minor participant. He admits that he arranged for the sale of the marijuana, that he made telephone calls, that he met with the parties to the transaction, that he was present, and that he helped to unload and weigh the bales of marijuana, but he contends that it was not his money that was used to purchase the marijuana. He argues that he was merely a go-between, and that while his participation was more than minimal, it was less than that of Jernigan.

■ Section 3B1.2 provides for a reduction of two levels in the base offense level for minor participants. A "minor participant" is defined as one who is "less culpable than most other participants, but whose role could not be described as minimal." *Id.* (n. 3).

We have noted that because most offenses are committed by participants of roughly equal culpability, "it is intended that [the adjustment] will be used infrequently." *United States v. Mitchell,* 31 F.3d 271, 278–79 (5th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 455, 130 L.Ed.2d 363 (1994) (internal quotation marks and citation omitted). A district court's finding on this sentencing factor is reviewed under the clearly erroneous standard. *Id.* at 278.

 A district court should not award the minor participation adjustment simply because a defendant's participation is somewhat less than the other participants. The defendant's participation must be "enough less so that he at best was peripheral to the advancement of the illicit activity." *United States v. Thomas,* 932 F.2d 1085, 1092 (5th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 264, 116 L.Ed.2d 217 (1991). A role as a go-between does not warrant a finding of minor participation. *Id.* Tremelling's actions as the person who brought the buyers and sellers together for the transaction was critical to the offense, and the court's refusal to find that he was a minor participant was not clearly erroneous.

IV. *Combination of factors unconstitutional*

Tremelling argues that the combination of the above alleged errors, with the loss of the anticipated downward departure under § 5K1.1 due to his failure to appear at sentencing, resulted in a sentence which deprived him of due process and equal protection. As set forth above, we find no merit to any of his individual claims of error and therefore, find that his claim of cumulative error must fail. *United States v. McCarty,* 36 F.3d 1349, 1359–60 (5th Cir.1994).

## CONCLUSION

For the foregoing reasons, the sentence imposed is AFFIRMED.