# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 5, 2013

No. 12-20093

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

KALEEM JAIMIE STEPHENS,

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Kaleem Stephens appeals his convictions and sentence resulting from his involvement in a conspiracy to rob an armored truck. We AFFIRM.

## FACTS AND PROCEEDINGS

Stephens was charged by indictment with conspiring to interfere with commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951(a), aiding and abetting the use of a firearm during a crime of violence or the possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 2, and conspiring to commit a violent offense while possessing a firearm, in violation of 18 U.S.C. § 924(o). Stephens proceeded to trial, where a number of his co-conspirators and undercover law enforcement officers who had been involved in the scheme testified to the following facts.

No. 12-20093

Michael Lewis worked for Garda, an armored truck company. A step-relation of his, Nick Price, approached him and asked whether Lewis could "drop a bag [of money] off or something" for him in the course of his work at Garda. Lewis refused. During a polygraph examination he took while applying for a position with the Texas Department of Public Safety ("DPS"), Lewis told the examiner about his conversation with Price. DPS agents followed up with Lewis and got him to call Price to ask whether he was still interested in stealing money from Garda. Price answered affirmatively and, with some prodding from Lewis, suggested $250,000 as a target amount.

Lewis then set up a meeting for Price with two law enforcement agents, DPS Agent Clara Brown and Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Quo Carothers, posing as other Garda employees. The three discussed details of the planned heist, and Price indicated that he would have to "rough [them] up" when getting the money and that he was already working with at least one partner on the plan. About a month later, after Price called Carothers a number of times to try to organize another meeting, Price met with Carothers, and gave two options for how they could proceed with the theft: either he and his partners would stage an armed robbery of the truck, or Carothers could just pull over and give Price and his partners the money. Price noted that he favored the second option, but Carothers responded that she could not get away with a plan like that. Carothers also told Price that guns would be necessary to make the plot believable.

Two weeks later, Price met with Carothers and Brown again and brought with him Stephens and Victor Bruno, who he explained were his partners. At this meeting, Carothers and Brown explained that both of them would not be in

2

No. 12-20093

the armored truck on the day of the theft and that there would be another Garda employee present, who would be uninvolved in the plot. The group then discussed more operational details, specifically that Price would be in charge of restraining Carothers during the robbery and that Stephens would obtain guns for the group's use. After the meeting, Price gave Stephens money to buy a gun, and Bruno obtained an assault weapon for use during the robbery. The day before the robbery was to take place, Price, Carothers, and Stephens discussed various details of the plan, including the possibility of increasing the amount of money to be taken to $500,000.

The day of the robbery, Price and Stephens were driving towards a meeting point when Price, feeling that "[s]omething wasn't right," exited the car. He was arrested shortly thereafter. Stephens continued on to the meeting point where he was arrested. Bruno and two others whom he had recruited to participate in the plot were separately arrested as well. Officers found a loaded gun in the car Stephens was driving and two guns in the car Bruno was driving.

The jury found Stephens guilty, and he was convicted on all three counts of the indictment. The district court sentenced Stephens to concurrent terms of 84 months' imprisonment on the two conspiracy charges. It sentenced him to an additional 60 months' imprisonment on the firearms charge, the statutory mandatory minimum, resulting in a total of 144 months' imprisonment.

Stephens appeals on four grounds: (1) that the district court erred in declining to give an entrapment jury instruction; (2) that the evidence presented was insufficient to support his convictions; (3) that the district court erred in calculating his advisory Sentencing Guidelines range at sentencing; and (4) that the sentenced imposed by the district court was substantively unreasonable.

No. 12-20093

## STANDARD OF REVIEW

"We review *de novo* a trial court's refusal to instruct the jury on the defense of entrapment." *United States v. Gutierrez*, 343 F.3d 415, 419 (5th Cir. 2003).  We assess the legal sufficiency of the evidence presented at trial "by examining the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict, and asking whether a rational trier of fact could have found guilt beyond a reasonable doubt." *United States v. Montes*, 602 F.3d 381, 388 (5th Cir. 2010).  In sentencing appeals, we "review[] de novo the district court's guidelines interpretations and review[] for clear error the district court's findings of fact." *United States v. Le*, 512 F.3d 128, 134 (5th Cir. 2007). "[A]ppellate courts review sentences for reasonableness under an abuse-of-discretion standard," and "a sentence within the Guidelines range is presumed reasonable on appeal." *United States v. Mondragon-Santiago*, 564 F.3d 357, 360 (5th Cir. 2009).

## DISCUSSION

### *1. Entrapment jury instruction*

In the process of finalizing jury instructions prior to the end of trial, the district court heard argument from both parties on the issue of whether the jury should be instructed as to the affirmative defense of entrapment.  The district court ultimately decided that such an instruction would be inappropriate.  On appeal, Stephens renews his argument that the jury should have been instructed as to entrapment.

To be entitled to an entrapment instruction, a defendant must "make a prima facie showing of (1) his lack of predisposition to commit the offense and (2) some governmental involvement and inducement more substantial than

No. 12-20093

simply providing an opportunity or facilities to commit the offense." *United States v. Theagene*, 565 F.3d 911, 918 (5th Cir. 2009). On appeal, we consider the record in the light most favorable to the defendant and determine whether there was enough evidence for a reasonable jury to find that the defendant was entrapped. *Id.* at 919.

Stephens has failed to point to sufficient evidence that would have allowed a reasonable jury to find that he lacked a predisposition to commit the offenses at issue. Stephens contends that the record shows that his preference, and that of his co-conspirators, was for a simple hand-off of money among co-conspirators, which would not constitute "robbery" within the meaning of the Hobbs Act. *See* 18 U.S.C. § 1951(b)(1) (defining "robbery" as, *inter alia*, "the unlawful taking or obtaining of personal property . . . by means of actual or threatened force"). Stephens argues that this preference for non-violent larceny and the fact that the Government played a role in encouraging a more violent crime was sufficient to show a lack of predisposition and require an entrapment instruction.

"Predisposition . . . focuses upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Mathews v. United States*, 485 U.S. 58, 63 (1988) (quoting *Sherman v. United States*, 356 U.S. 369, 372 (1958)). We have previously held that "[a] lack of predisposition can appear from, for example, lack of prior interest or experience related to the crime, significant hesitation or unwillingness, or attempts to return discussion to lawful conduct." *Theagene*, 565 F.3d at 920. Where a defendant "promptly avail[s] himself of [a] criminal opportunity, it is unlikely that his entrapment defense [warrants] a jury instruction." *Jacobson v. United States*, 503 U.S. 540, 550 (1992).

No. 12-20093

We see no evidence in the record indicating that Stephens hesitated at all once the plan became one of armed robbery instead of non-violent theft, that Stephens was unwilling to use guns, or that Stephens did anything other than promptly avail himself of the opportunity to carry out an armed robbery once the plot was presented to him.  Stephens's contention that his "preference" was for a lesser offense is simply not relevant in the context of this inquiry in light of the evidence presented at trial.  As a result, the district court did not err in declining to give an entrapment instruction.

## 2. Evidentiary insufficiency

Next, Stephens argues that the Government failed to introduce sufficient evidence to show that he was *not* entrapped.  However, under the burden-shifting framework within which we assess entrapment, the Government is not required to prove beyond a reasonable doubt that a defendant was not entrapped unless the defendant *first* sets out a *prima facie* case that he was entrapped.  *See Theagene*, 565 F.3d at 918.  Because we hold that Stephens has failed to do so, *see supra* Part 1, his evidentiary insufficiency argument is unavailing.

## 3. Procedural sentencing errors

With respect to the district court's calculation of his sentence under the Sentencing Guidelines, Stephens alleges two errors.  First, he argues that the district court should not have imposed a three-point offense level enhancement under U.S.S.G. § 2B3.1(b)(7)(D), which applies when the loss from a robbery exceeds $250,000.  Second, he contends that he was entitled to a two-point offense level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.

### (A) Loss calculation

6

No. 12-20093

Stephens asserts that his three-point enhancement for a loss greater than $250,000 was erroneous for two reasons. He argues that § 2B3.1(b)(7)(D) applies only to actual loss and not to intended loss. Since there was no actual loss resulting from his offenses, the enhancement was inappropriate. He also contends that he and his co-conspirators originally sought a far lesser amount of money, but were entrapped by the Government into pursuing an amount over $250,000.

He raises the former argument for the first time on appeal, so our review is for plain error only. *United States v. John*, 597 F.3d 263, 282 (5th Cir. 2010). Under this standard, we have the discretion to grant an appellant relief only where a clear or obvious error is made that affects his substantial rights and when failure to correct the error would seriously affect "the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

Stephens has met his burden of showing that a clear or obvious error was made, because he is correct that § 2B3.1(b)(7)(D), a provision dealing with the completed offense of robbery, applies only to actual loss. However, we hold that this error did not affect his substantial rights. We have previously held that U.S.S.G. § 2X1.1, a sentencing provision covering inchoate offenses including conspiracy, is applicable to Hobbs Act robbery conspiracies and directs an enhancement for intended loss that incorporates the enhancements for actual loss contained in § 2B3.1(b)(7). *See United States v. Gonzales*, 642 F.3d 504, 505 (5th Cir. 2011) (per curiam); *see also United States v. Amato*, 46 F.3d 1255, 1262-63 (2d Cir. 1995) ("Section 2X1.1(a), when applied to robbery conspiracies, adopts

by cross-reference all the adjustments of § 2B3.1, even where the offense conduct causing the adjustment was intended but unachieved.").

"A sentencing error [only] affects a defendant's substantial rights if he can show a reasonable probability that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence." *United States v. Medina-Torres*, 703 F.3d 770, 778 (5th Cir. 2012) (quoting *United States v. Mudekunye*, 646 F.3d 281, 289 (5th Cir. 2011) (per curiam)). Because a correct application of § 2X1.1 would have yielded the same result as the mistaken direct application of § 2B3.1(b)(7)(D), Stephens cannot show a reasonable probability that he would have received a lesser sentence absent the district court's minor cross-referencing error.

Stephens's second argument, that he was entrapped into pursuing an amount in excess of $250,000, is unavailing as well. We have never recognized sentencing entrapment as a defense, *see United States v. Jones*, 664 F.3d 966, 984 (5th Cir. 2011), and we have consistently noted that, were we to accept it, it would only be cognizable in cases involving "true entrapment," *United States v. Tremelling*, 43 F.3d 148, 152 (5th Cir. 1995) (quoting *United States v. Cotts*, 14 F.3d 300, 306 n.2 (5th Cir. 1994)), or "overbearing and outrageous conduct" on the part of the Government, *id.* at 151. Here, as stated above, we see no evidence of a lack of predisposition on the part of Stephens that would be required for a showing of true entrapment, *see infra* Part 1, and we also see no evidence of overbearing or outrageous conduct.

Although a Government informant, Lewis, told Price early in the investigation that "fifty [thousand dollars] is a little low for me to be risking my job over," it was Price who came back with the figure of $250,000 as an initial

target.  Similarly, it was Price who later told Carothers that they should aim for an amount between $250,000 and $500,000.  Carothers then told Stephens that Price "changed it to 500," to which Stephens replied, "Okay."  Since it was one of Stephens's co-conspirators who suggested increasing the targeted amount of money over $250,000, since the Government's conduct amounted to nothing more than passive encouragement, and since there is no evidence that Stephens resisted the increase in the targeted amount of money, we hold that Stephens would not be entitled to a sentencing entrapment defense even were it available in this circuit.  *See Tremelling*, 43 F.3d at 151-52 (holding that the Government's bringing quantities of drugs to a controlled buy in excess of a previously agreed-upon amount could not amount to sentencing entrapment where the defendant did not resist taking on the additional drugs).

### *(B) Acceptance of responsibility*

Despite proceeding to trial, Stephens argues that he should be entitled to an offense-level reduction for acceptance of responsibility pursuant to § 3E1.1, because he only went to trial to assert and preserve a claim of entrapment.  We have consistently held that defendants who deny guilt on the basis of an entrapment defense are not entitled to a reduction under § 3E1.1.  *See United States v. Partida*, 385 F.3d 546, 563-64 (5th Cir. 2004).  The district court's denial of a reduction under § 3E1.1 was not in error.

### *4. Substantive reasonableness*

Finally, Stephens asserts that his sentence was substantively unreasonable in light of the principles set out in 18 U.S.C. § 3553(a). We review such claims for abuse of discretion only, and we presume the district court's sentence here reasonable as it fell within Stephens's Guidelines range.

No. 12-20093

*Mondragon-Santiago*, 564 F.3d at 360.  While Stephens attempts to minimize the severity of his offenses by noting that the offense conduct did not result in harm to any actual victims and that Stephens was led along by his co-conspirators and law enforcement agents, we fail to see how such arguments can overcome the presumption of reasonableness, given that Stephens was arrested while proceeding to a location at which he fully expected to participate in a potentially highly-dangerous armed robbery of an armored truck.  We also note that the district court explicitly mentioned at sentencing that it was considering the § 3553(a) factors in coming to its decision.  In light of this record, we hold that the district court did not abuse its discretion in sentencing Stephens at the bottom of his Guidelines range.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.