# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-51090

United States Court of Appeals
Fifth Circuit

**FILED**

February 2, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

ERIC WARNER CAWTHON,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:14-CR-93

Before OWEN, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Eric Warner Cawthon appeals his conviction following a jury trial of attempted coercion and enticement of a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). His sole basis for appeal is that the district court erred in denying his request for an entrapment instruction. Because we agree with the district court that Cawthon did not make a showing sufficient to entitle him to such an instruction, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-51090

**I**

A multi-agency task force conducted an undercover operation designed to identify adults in the Midland and Odessa, Texas area with a sexual interest in children. Members of the task force posted advertisements on a section of the website Craigslist that was restricted to adults. The ads were generic and expressed an interest in meeting other adults, but when subjects responded, undercover members of the task force posed as children in communications that ensued. Because the goal of the operation was to identify individuals with a sexual interest in children, an agent would, as soon as practicable after initial contact, falsely represent that he or she was a minor, providing a specific age.

Cawthon replied to one of the task force's ads, titled "Home Alone," which requested that viewers "HMU [hit me up] if you're not scared." The ad was posted by an officer posing as a minor named Ashley. "Ashley" told Cawthon that she was fourteen years old early in the course of their first communication, when Cawthon asked about her age. Her apparent youth did not deter Cawthon. An innuendo-laden conversation transpired, mostly through text messaging, for about 90 minutes, and the two made a plan to meet at a truck stop. When Cawthon arrived at the agreed-upon location, instead of the fourteen-year-old girl he was expecting, Cawthon was met by police officers and arrested. In a post-arrest interview, after receiving a *Miranda* warning, Cawthon admitted that he believed that the girl with whom he had been conversing was fourteen years old and that he had planned to have sex with her. At no point during the interview did Cawthon reverse course and profess to believe that "Ashley" was anything but a fourteen-year-old girl.

At trial, however, Cawthon testified that he had not believed that "Ashley" was actually fourteen years old, and that instead he had believed she was an adult playing a "game." At the conclusion of the trial, Cawthon

No. 14-51090

requested that the district court charge the jury on entrapment.  The district court denied the request, noting that Cawthon was the first to propose a sexual rendezvous and that Cawthon offered to pay money for someone to bring "Ashley" to him, suggesting he was predisposed to commit the offense and not induced by the Government.  The district court further found that Cawthon's request for a picture only minutes after learning of "Ashley's" age, and his subsequent comments about her looks, also demonstrated his active, enthusiastic participation in the offense.

The jury found Cawthon guilty.  Cawthon now appeals the denial of the entrapment instruction.

## II

We review a district court's refusal to provide the jury with an entrapment instruction de novo.[1]  "To be entitled to an entrapment instruction, a defendant must make a prima facie showing of (1) his lack of predisposition to commit the offense and (2) some governmental involvement and inducement more substantial than simply providing an opportunity or facilities to commit the offense."[2]  The "measure of sufficiency" of a defendant's prima facie showing is "whether the evidence of inducement and lack of predisposition, considered together" and viewed in the light most favorable to the defendant, "is sufficient to permit a reasonable jury to find entrapment."[3]  Although "consideration of [the lack of predisposition and of government inducement] often overlaps," a defendant seeking an entrapment instruction must make "some showing" as to each, so we consider the two factors separately.[4]

---

[1] *United States v. Stephens*, 717 F.3d 440, 444 (5th Cir. 2013).

[2] *Id.* (citation omitted).

[3] *United States v. Theagene*, 565 F.3d 911, 918 (5th Cir. 2009).

[4] *Id.* at 919 (citation omitted).

No. 14-51090

"Predisposition . . . focuses upon whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime."[5]  Specifically, we consider "whether the defendant intended, was predisposed, or was willing to commit the offense before first being approached by government agents."[6]  "[I]ndependently motivated behavior that occurs after government solicitation begins may constitute evidence of predisposition."[7]  "A lack of predisposition can appear from, for example, lack of prior interest or experience related to the crime, significant hesitation or unwillingness, or attempts to return discussion to lawful conduct."[8]  On the other hand, evidence of "active, enthusiastic" participation or "demonstrated expertise in the criminal endeavor" will prove predisposition.[9]  "[A] defendant's ready and willing participation in government-solicited criminal activity, standing alone, is sufficient to prove predisposition."[10]  Thus, "[w]here a defendant promptly avails himself of a criminal opportunity, it is unlikely that his entrapment defense warrants a jury instruction."[11]

"Government inducement consists of the creative activity of law enforcement officials in spurring an individual to crime" and includes "either

---

[5] *Stephens*, 717 F.3d at 445 (citation omitted).

[6] *Theagene*, 565 F.3d at 919 (emphasis and citations omitted).

[7] *United States v. Nelson*, 732 F.3d 504, 515 (5th Cir. 2013) (alteration in original; emphasis and citation omitted).

[8] *Theagene*, 565 F.3d at 920.

[9] *Nelson*, 732 F.3d at 514 (citation omitted).

[10] *Id.* at 515 (quoting *United States v. Reyes*, 239 F.3d 722, 739 (5th Cir. 2001)); *see also id.* at 514 ("If a defendant displays such expertise or enthusiasm yet fails to show any hint of hesitation or unwillingness, we will find predisposition." (citation omitted)).

[11] *United States v. Stephens*, 717 F.3d 440, 445 (5th Cir. 2013) (citation and brackets omitted).

threatening or harassing conduct or actions designed specifically to take advantage of the defendant's weaknesses."[12]  "Artifice and stratagem may be employed" without crossing into inducement, however, "to catch those engaged in criminal enterprises."[13]

Cawthon argues on appeal that he carried his burden with respect to both factors.  He asserts that he sought only to engage in legal adult activity by responding to an ad placed on an adult section of Craigslist and that the Government induced him to commit the crime of conviction by posing as a precocious fourteen-year-old and "appealing to his fantasies."  He further asserts that he was entitled to the entrapment instruction because he gave a plausible innocent explanation for his behavior that would allow a reasonable jury to find that he lacked a predisposition for the crime, explaining that he believed the person with whom he was conversing was actually an adult pretending to be a child.

**A**

As to lack of predisposition, the record demonstrates that Cawthon exhibited no significant hesitation or unwillingness to commit the crime at issue.  To the contrary, it shows that Cawthon was a "keen" and "eager" participant.[14]  He was told within ten minutes of beginning the conversation with "Ashley" that she was fourteen years old, and immediately thereafter asked her to send a picture of herself.  Then, after receiving a picture of an

---

[12] *United States v. Gutierrez*, 343 F.3d 415, 420 (5th Cir. 2003) (citation omitted).

[13] *Jacobson v. United States*, 503 U.S. 540, 548 (1992) (citations omitted); *see also Gutierrez*, 343 F.3d at 420 ("Simply because the chain of events leading to the defendant's arrest originated with the government does not entitle a defendant to an entrapment instruction.  It is proper (i.e., not an 'inducement') for the government to use a 'sting,' at least where it amounts to providing a defendant with an 'opportunity' to commit a crime." (citation omitted)).

[14] *United States v. Ogle*, 328 F.3d 182, 185-86 (5th Cir. 2003).

No. 14-51090

adult age-regressed to appear to be a fourteen-year-old girl, Cawthon complimented "Ashley's" looks. Within forty-five minutes of first contact, after "Ashley" observed that it looked like they would be unable to meet due to her inability to drive, Cawthon attempted to facilitate a meeting by asking "Ashley" if she could obtain a ride from someone and suggesting that if a truck stop was nearby, then he could drive his bus to it and she could meet him there. When "Ashley" indicated she might be able to ask a friend to drive her, Cawthon immediately responded "Please do." After "Ashley" proposed a specific truck stop as a meeting point, Cawthon countered by asking if "Ashley's" friend would be willing to drive instead to a different truck stop near where he was located, offering to pay the friend ten dollars in exchange for the accommodation.

Additionally, after Cawthon asked "Ashley" to call him on the phone and a female officer using a voice changer that made her voice sound younger called, Cawthon told "Ashley" over the phone that he would "show [her] how to make a man happy." He then further escalated the conversation, telling her that men liked a girl to "do what she's told," directing her to call him "Daddy" because it would be "hot," instructing her what to wear when they met, and saying that they would go back to his hotel and she would "strip down." Ultimately, within two hours of the interaction's inception, Cawthon drove to a truck stop in the middle of the night to meet a girl he believed to be fourteen, later telling officers in an interview that he thought "Ashley" was fourteen and planned to have sex with her. In sum, the evidence demonstrates that Cawthon was an enthusiastic participant who "promptly avail[ed] himself of [the] criminal opportunity," precluding an entrapment instruction.[15]

---

[15] *Stephens*, 717 F.3d at 445 (citation omitted).

No. 14-51090

Furthermore, Cawthon's assertion that there is an innocent explanation for his behavior which undermines predisposition—specifically, that he believed "Ashley" was actually an adult playing a "game"—is unpersuasive. First, in requesting an entrapment instruction in the district court, Cawthon did not mention his supposedly mistaken belief as to "Ashley's" age in support of the request, precluding him from raising this new argument on appeal.[16] Second, as noted above, "Ashley" said that she was fourteen years old almost immediately during the conversation, the Government sent Cawthon a photograph altered to depict a fourteen-year-old girl, and Cawthon told officers following his arrest that he knew "Ashley's" age. Cawthon's "game" explanation was not sufficiently plausible to warrant submitting to the jury whether he was predisposed to commit the crime.[17]

**B**

Cawthon has failed to show government inducement. While "Ashley" may have first brought up the possibility of meeting (though only after Cawthon asked her if she had a car) and made certain statements throughout the conversation that alluded to sex, it was Cawthon who first introduced and then consistently escalated the sexual nature of the dialogue. Without significant prodding from the Government, Cawthon arranged to meet "Ashley" within two hours of their first communication. Because nothing in the record approaches "threatening or harassing conduct or actions designed

---

[16] *See, e.g.*, *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal.").

[17] *See United States v. Theagene*, 565 F.3d 911, 922 (5th Cir. 2009).

No. 14-51090

specifically to take advantage of the defendant's weaknesses,"[18] there is no evidence of government inducement here.

\* \* \*

For the reasons set forth above, the district court's judgment is AFFIRMED.

---

[18] *United States v. Gutierrez*, 343 F.3d 415, 420 (5th Cir. 2003) (internal quotation marks and citation omitted).